UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON L. SANDERS,

        Plaintiff,                      Case No. 1:21-cv-746

v.                                        Honorable Ray Kent

MATT MACAULEY et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Macauley, Gelser, and Robinson. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's retaliation claim against

Defendant Unknown Party Nurse Supervisor and his Eighth Amendment claims against Defendants Allen and Darnell.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden Matt Macauley, Nurses Unknown Strong and Unknown Corning, Nurse Practitioner Unknown Gelser, Corrections Officers C. Smith, Unknown Allen, and Unknown Darnell, Nurse Supervisor Unknown Party, and Grievance Coordinator Unknown Robinson.

Plaintiff alleges that in March of 2021, he and another prisoner filed a civil rights complaint against Defendant Strong and other medical staff at IBC relating to their handling of the COVID-19 pandemic. On May 25, 2021, Plaintiff was seen by the eye doctor for suspected glaucoma. Later that day, Plaintiff was called out for medical eyedrops and glasses, but when he arrived at the medication window, his medication was missing. Defendant Corning told Plaintiff to return on June 1, 2021, because staff at that time would know where to find the medication.

Plaintiff states that May 30, 2021, was Memorial Day, so he went to the medication window on June 1, 2021, as instructed. Once there, Defendant Strong told Plaintiff: "You don't have nothing coming from me but a ticket since you continue to write complaints and grievances on staff." (Compl., ECF No. 1, PageID.7.) Plaintiff received a misconduct ticket written by Defendant Strong for being out of place, claiming that Plaintiff was in the medication line without authorization. Plaintiff was later found not guilty of the misconduct.

On June 8, 2021, Plaintiff broke his foot and was taken to health services in a wheelchair. Defendant Gelser ordered a detail for ice, ace wraps, and crutches. Plaintiff's foot

was swollen, and a bone protruded from the side. When Plaintiff returned to the unit, he could not sleep because of the pain. Eventually unit officers wrote Plaintiff a pass so that he could return to health services and request pain medication. Plaintiff states that Defendant Strong was working at one window, so he went to the other window, where Nurse Scott was working. Plaintiff eventually received five packets of non-aspirin pain reliever and returned to his cell. However, once in his housing unit, Plaintiff received a misconduct ticket written by Defendant Strong which asserted that Plaintiff was out of place. Plaintiff explained to Sergeant Stump that he had authorization to be at the medication window, but Sergeant Stump refused to investigate. The misconduct was later dismissed.

On June 9, 2021, Plaintiff was scheduled for a B12 shot and the unit officers took Plaintiff to health services in a wheelchair. Once there, Defendants Corning and Unknown Nurse Supervisor began yelling and asking who had given Plaintiff permission to be in a wheelchair. Plaintiff explained that the officers did because he had a broken foot and could not walk. Defendant Corning then sent the wheelchair away and made Plaintiff walk the half mile to his unit after he had been given his B12 shot.

Plaintiff continued to be denied a wheelchair, a shower chair, and pain medication until July 13, 2021. Plaintiff states that he was required to walk a half mile to a mile several times a day in order to attend chow, health service callouts, school, law library, and to process legal mail. Plaintiff also claims that the pain in his foot kept him from sleeping at night.

On June 16 or 17 of 2021, Defendant Corning called Officer Brown and told him to write Plaintiff a misconduct if he requested ice for his foot from the dining hall. Plaintiff states that he had been sending medical complaints to health services about his foot swelling up and going numb. On June 20, 2021, while Plaintiff was waiting in a medication line, Defendant Smith

told Plaintiff to put his mask on.  Plaintiff states that it took a minute to retrieve the mask from his pocket and Defendant Smith warned him to hurry or he would tie it to Plaintiff's "ugly black face." (*Id.*, PageID.9.)  Plaintiff responded that since Defendant Smith was harassing him, he would write a grievance on any officer without a mask.  Defendant Smith then told Defendant Darnell, who was standing nearby, that Plaintiff wrote grievances on nurses and would pay.  Both officers then took Plaintiff's crutches, handcuffed him, and took him to segregation.  Plaintiff later received a threatening behavior misconduct.

On June 23, 2021, Plaintiff was called to health services and told that x-rays showed he would not need surgery.  Plaintiff's foot was placed in a splint, cotton sleeve, cotton mesh, and three ace wraps, to keep his foot immobile.  On June 26, 2021, Plaintiff slipped and fell on a wet floor, which caused a bone to push out of the top of Plaintiff's foot.  Plaintiff states that this was the second time he had fallen while on crutches, and that the first time he fell he had rolled his ankle.  On June 27, 2021, Defendant Corning noted that there was more damage to Plaintiff's foot, but nonetheless removed the cotton sleeve, mesh, and ace wraps, stating that Nurse West, who had applied them, was too kind.  Plaintiff states that removing the dressings caused a searing pain in his foot.  Defendant Corning gave Plaintiff thirty packets of ibuprofen and told him to take the recommended dosage every two hours.

After being processed in segregation, Defendant Allen placed Plaintiff's legal property and address book in a plastic bag and put it on Plaintiff's cell door.  Later that night, Defendant Allen took the bag off Plaintiff's door.  Plaintiff asked where Defendant Allen was taking the property and Defendant Allen responded, "Ass wholes [sic] who write grievances get their property thrown in the trash."  (*Id.*, PageID.11.)

4

From June 27, 2021, until July 4, 2021, Plaintiff suffered from difficulty breathing, rashes, and stomach pain from taking an excessive amount of ibuprofen. Plaintiff complained to Defendant Darnell and Officer Ellington, who refused to notify health services. Plaintiff states that he has a well-known aspirin allergy. Plaintiff states that he was unable to shower from June 20, 2021, until July 13, 2021, because he was handicapped and IBC does not have handicapped showers.

On July 1, 2021, Plaintiff received a step I grievance rejection from Defendant Robinson, who stated that Plaintiff's grievances were non-grievable and that Plaintiff was on modified access to the grievance procedure. Plaintiff claims that he is suffering from anxiety, depression, and stress as a result of retaliation and denial of medical treatment by staff. Plaintiff states that neither the doctor nor Nurse Practitioner Wideman ordered a bottom bunk detail for Plaintiff, so he has been forced to claim a ladder and sleep on a top bunk while his broken foot was healing.

Plaintiff claims that Defendants Macauley, Strong, Corning, Unknown Nurse Supervisor, Allen, and Darnell violated his rights under the First and Eighth Amendment. Plaintiff further contends that Defendants Gelser violated his Eighth Amendment rights, and that Defendants Smith and Robinson violated Plaintiff's First Amendment rights. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Retaliation

Plaintiff claims that Defendants Macauley, Strong, Corning, Smith, Unknown Party, Allen, Robinson, and Darnell all retaliated against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*,

175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendants Macauley and Robinson retaliated against him by interfering with the grievance process.  Plaintiff states that Defendant Robinson rejected certain grievances because they were nongrievable and/or Plaintiff was on modified access to the grievance procedure.  The Court notes that Plaintiff fails to mention Defendant Macauley in the body of his complaint.  Nor does Plaintiff allege facts indicating that Defendant Macauley had any involvement in the rejection of his grievances.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See*

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Accordingly, Plaintiff fails to state a claim against Defendant Macauley.

In addition, the Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct, because modified-access status does not impair the ability to file civil rights actions in federal court. A plaintiff's placement on modified access to the grievance procedure merely enables prison officials to screen a prisoner's grievances prior to filing to determine whether they are grievable, non-frivolous, and non-duplicative. *See Kennedy*, 20 F. App'x at 471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)).

For the same reasons that placement on modified grievance access does not amount to adverse action, an official's rejection of a grievance is not sufficiently adverse to state a retaliation claim. *See, e.g.*, *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016). Therefore, Plaintiff's retaliation claim against Defendant Robinson is properly dismissed.

Plaintiff claims that Nurse Supervisor Unknown Party retaliated against him when she yelled at him for arriving at health services for his B12 shot in a wheelchair. However, Plaintiff

8

fails to allege any facts showing that Defendant Nurse Supervisor Unknown Party was aware of Plaintiff's history of filing grievances, or that Defendant Nurse Supervisor Unknown Party was motivated by a desire to retaliate on that basis. Nor does Plaintiff allege that Defendant Nurse Supervisor Unknown Party did anything more than yell at him. The law is clear that verbal harassment and minor threats are not adverse actions that would deter a person of ordinary firmness from engaging in protected conduct. *See Thaddeus-X*, 175 F.3d at 398 (stating that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations"); *Smith v. Craven,* 61 Fed. Appx. 159, 162 (6th Cir. 2003) (finding that verbal harassment and minor threats were insufficient to state adverse actions that could deter a person of ordinary firmness from engaging in protected conduct); *Carney v. Craven,* 40 Fed. Appx. 48, 50 (6th Cir. 2002) (same). Therefore, Plaintiff's retaliation claim against Defendant Nurse Supervisor Unknown Party is properly dismissed.

The Court concludes that Plaintiff's allegations against Defendants Strong, Corning, Smith, Allen, and Darnell are sufficient to support claims of retaliation. Therefore, the Court may not dismiss these claims on initial review.

**IV.     Eighth Amendment**

Plaintiff contends that Defendants Macauley, Strong, Gelser, Corning, Nurse Supervisor Unknown Party, Allen, and Darnell violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal

9

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually

10

knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As noted above, Plaintiff fails to mention Defendant Macauley in the body of his complaint or to allege any facts indicating that Defendant Macauley engaged in any active misconduct against him. Therefore, Plaintiff's Eighth Amendment claim against Defendant Macauley fails for the same reasons that he failed to state a retaliation claim against him.

Plaintiff claims that Defendants Allen and Darnell denied him the ability to shower for three to five weeks because IBC did not offer shower chairs for handicapped prisoners. A plaintiff must show that a defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act). Plaintiff fails to allege any facts showing that Defendants Allen or Darnell were responsible for the lack of shower chairs at IBC. Because Plaintiff fails to allege facts showing that Defendants Allen and Darnell had the ability or authority to provide him with a shower chair or handicap accessible shower, he cannot show that they violated his Eighth Amendment rights.

Plaintiff also claims that he suffered from difficulty breathing, rashes, and stomach pain from taking an excessive amount of ibuprofen between June 27, 2021, and July 4, 2021, and that Defendant Darnell refused to notify health services when Plaintiff complained. However, Plaintiff does not claim that this was his only method of obtaining treatment or allege facts showing that he was unable to send a health care kite requesting medical attention for his symptoms by the usual methods. Nor does Plaintiff allege that Defendant Darnell had the authority or knowledge to contravene or second-guess decisions by healthcare officials. Administrative or custody

officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell*, 867 F.2d at 959). Therefore, Plaintiff's allegations against Defendant Darnell do not state a claim under the Eighth Amendment.

Plaintiff also asserts that Defendant Gelser violated his Eighth Amendment rights. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). However, Plaintiff's only allegations against Defendant Gelser is that she ordered a detail for ice, ace wraps, and crutches on June 8, 2021, after Plaintiff broke his foot and was taken to health services in a wheelchair. Based on Plaintiff's complaint, Defendant Gelser responded to his injury by providing appropriate care. Plaintiff does not state an Eighth Amendment claim against Defendant Gelser because he does not allege facts showing that Defendant Gelser was deliberately indifferent to a serious medical need.

Plaintiff alleges that Defendants Nurse Supervisor Unknown Party and Corning violated his Eighth Amendment rights on June 9, 2021, when they yelled at him for using a wheelchair and ultimately sent the wheelchair away, making Plaintiff walk the half mile back to his unit on a broken foot. Plaintiff also alleges that Defendant Corning removed medically necessary dressings from his foot, stating that the nurse who had applied them was too kind, and that she interfered with Plaintiff's ability to get ice to treat swelling and numbness of his foot. Finally, Plaintiff alleges that Defendants Strong denied him prescribed eyedrops on June 1, 2021. The Court concludes that Plaintiff has alleged sufficient facts to support Eighth Amendment claims against Defendants Nurse Supervisor Unknown Party, Strong, and Corning.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Macauley, Gelser, and Robinson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's retaliation claim against Defendant Unknown Party Nurse Supervisor and his Eighth Amendment claims against Defendants Allen and Darnell. Plaintiff's retaliation claims against Defendants Strong, Corning, Smith, Allen, and Darnell, and his Eighth Amendment claims against Defendants Nurse Supervisor Unknown Party, Strong, and Corning remain in the case.

An order consistent with this opinion will be entered.

Dated:  December 20, 2021                    /s/ Ray Kent
                                             Ray Kent
                                             United States Magistrate Judge